UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| RICKEY CHILDS, individually and as Administrator of the Estate of RICKEY CHILDS, JR., deceased, <br><br> Plaintiff, <br><br> v. <br><br> CITY OF CHICAGO, *et al.*, <br><br> Defendants. | Case No. 13-CV-7541 <br><br> Judge Joan B. Gottschall |

## MEMORANDUM OPINION AND ORDER

On the night of Sunday, October 28, 2012, Chicago police officer Pablo Mariano ("Mariano"), who was then on duty, shot sixteen-year-old Rickey Childs, Jr. ("Childs"); the bullet struck Childs in the back of the head. He was pronounced dead at a hospital the next day. Defs.' Joint L.R. 56.1 State [sic] of Uncontested Facts ("Defs.' SOF") ¶ 2, ECF No. 69; *see also* Defs.' Ans. to 1st Am. Compl. ¶ 8, ECF No. 12 (admitting Childs was pronounced dead at 9:51 p.m. on October 29, 2012.) In this lawsuit, his father, plaintiff Rickey Childs, Sr., ("Childs, Sr.") claims Mariano used excessive force. Childs, Sr., brings claims on his own behalf and as the administrator of Childs' estate. 1st Am. Compl. ¶ 2, ECF No. 6. In addition to the § 1983 claim against Mariano, the complaint asserts conspiracy claims under § 1983 and Illinois law; a wrongful death claim under Illinois law; a claim under the Illinois survival statute, 755 ILCS 5/27-6; and a respondeat superior count against the City of Chicago ("the City").

The defendants move for summary judgment. They argue that the undisputed evidence shows that Mariano's use of deadly force was objectively reasonable. Finding material factual disputes over whether Mariano had information from which he could conclude that Childs had a

1

weapon and whether Childs was fleeing, the court denies summary judgment on all but the plaintiff's conspiracy claims.

## I. FACTS AND SUMMARY JUDGMENT EVIDENCE[1]

Mariano had never seen Childs before the night of October 28, 2012. Pl.'s SOF ¶¶ 48–49, ECF No. 80. That night, two black men wearing ski masks attempted to rob an individual referred to here as C.M.[2] near 8223 S. Maryland Street in Chicago, Illinois. Pl.'s SOF ¶ 1. C.M. could not see their faces. Pl.'s SOF ¶ 2.

Mariano and another police officer, Robert Gonzalez ("Gonzalez"),[3] were patrolling the area in a marked police car. Pl.'s SOF ¶ 3; Defs.' SOF ¶ 7; Mariano Dep. 29:20–30:10. As Mariano and Gonzalez drove north on Maryland, C.M. flagged them down.[4] *See* Defs.' SOF ¶¶ 7–8; Pl.'s SOF ¶ 7. He told Mariano and Gonzalez that an attempted robbery had occurred. *See* Defs.' Reply to Pl.'s Resp. to Defs.' SOF ¶ 9, ECF No. 83.

The parties disagree about exactly what else C.M. told Mariano and Gonzalez. C.M. stated that he "pointed towards the way the incident had happened at [sic]."[5] Defs.' Ex. C at 9,

---

[1] Local Rule 56.1(a)(3) requires a party moving for summary judgment to submit "a statement of material facts as to which the moving party contends there is no genuine issue and that entitle the moving party to judgment as a matter of law." *Cracco v. Vitran Express, Inc.*, 559 F.3d 625, 632 (7th Cir. 2009) (citing N.D. Ill. L.R. 56.1(a)(3)). Under Local Rule 56.1(b)(3), the nonmoving party then must submit a "concise response" to each statement of fact, "including, in the case of any disagreement, specific references to the affidavits, parts of the record, and other supporting materials relied upon." N.D. Ill. L.R. 56.1(b)(3)(B). The party opposing summary judgment may also present a separate statement of additional facts "consisting of short numbered paragraphs," with citations to the record, that require the denial of summary judgment. N.D. Ill. L.R. 56.1 (b)(3)(C); *see also Ciomber v. Coop. Plus, Inc.*, 527 F.3d 635, 643-44 (7th Cir. 2008). For summary judgment purposes, Local Rule 56.1(a) requires the court to "deem admitted those facts that are not contested in the parties' submissions related to the motion for summary judgment." *Robinson v. Bandy*, 524 F. App'x 302, 305 (7th Cir. 2013) (citing *Raymond v. Ameritech Corp.*, 442 F.3d 600, 608 (7th Cir. 2006)). The court recites the facts in the light most favorable to Childs and notes disputed facts as appropriate.
[2] C.M.'s identity is subject to the agreed protective order entered May 2, 2014. ECF No. 16.
[3] Mariano identified Gonzalez as "Bobby" at his deposition. Mariano Dep. 29:10. Plaintiff named Gonzalez as a defendant in his amended complaint but voluntarily dismissed him. *See* Stipulation to Voluntarily Dismiss Defendant Robert Gonzalez 1, July 13, 2016, ECF No. 66 (dismissing Gonzalez with prejudice).
[4] Mariano and Gonzalez made contact with C.M. earlier the same night. *See* Mariano Dep. 31:4–33:17; C.M. Stmt. 10–11. The parties do not discuss this fact in their briefing.
[5] On October 29, 2012, C.M. signed a statement before the Chicago Independent Police Review Authority reading: "I swear or affirm under penalties provided by law that the information contained in the above and/or attached

2

ECF No. 70. Mariano testified that C.M. pointed to one of two men who were then standing down the street and said something like, "The guy over there with the black hoodie has a gun, he tried to rob me." Mariano Dep. 34:10–19. One of the officers, according to C.M.'s statement, "had seen one of the guys trying to rob [him] running and [the officer] started chasing him." C.M. Statement 6-7. Viewed in a light favorable to the plaintiff, C.M.'s testimony does not make clear whether C.M. communicated to Mariano or Gonzalez that the person who ran was the person who attempted to rob C.M. or whether Gonzalez assumed as much from the fact that the person wearing the black hoodie began to run. *See id.* More importantly, a reasonable jury could find the following fact from C.M.'s version of the encounter: C.M. never told Mariano and Gonzalez that the person who robbed him was armed. *Compare* C.M. Statement at 6, *and* ECF No. 83 at 4 ¶ 9 (stating that it is undisputed that "C.M. told the officers he had been robbed and pointed them in a particular direction"); *with* Mariano Dep. 34:10–19.

**A. The Chase**

Mariano and Gonzalez returned to their police car and began driving toward the men at whom C.M. had pointed. *See* Pl.'s SOF ¶ 12. As the car approached, one of the men ran, and Gonzalez got out of the car and gave chase on foot. *See id.*; Defs.' SOF ¶ 12.

Mariano described the person who ran as wearing a black hoodie. *See* Defs.' SOF ¶ 9. Mariano testified that he saw the person in the black hoodie "clinching" the right side of his waistband before he began running; based on that observation, Mariano assumed that he had a gun. Mariano Dep. 39:15–23.

---

statement summary, or the attached electronically recorded statement, is true and accurate." ECF No. 70 at 3. The parties treat C.M.'s statement as competent for summary judgment purposes. "Evidence presented to defeat a summary judgment motion need not be in admissible form, but it must be admissible in content." *Payne v. Pauley*, 337 F.3d 767, 781 (7th Cir. 2003) (quoting *Stinnett v. Iron Works Gym/Exec. Health Spa, Inc.*, 301 F.3d 610, 613 (7th Cir. 2002)). Consequently, the court implies no view on whether C.M.'s statement complies with the requirements for an unsworn declaration set forth in 28 U.S.C. § 1746(2). The court employs the verb "testify" to describe C.M.'s statement solely as a matter of convenience.

Mariano saw Gonzalez pursue the person in the black hoodie down a gangway.[6] *See* Defs.' Resp. to Pl.'s SOF at 26 ¶ 17 (stating that Mariano's testimony does not clarify whether, as the plaintiff contends, the person turned east into the gangway). The court pauses here to note that Mariano did not see Gonzalez for the remainder of the chase and did not know where he was. As far as the record shows, Mariano is the only living eyewitness to the subsequent events of the chase. *See* Defs.' SOF ¶ 24–25, 32–35 (no other officer was present; Mariano does not recall anyone else in the gangway where he shot Childs; and the plaintiff's other witnesses were not there).

Mariano then drove north to 82nd Street and turned right. Pl.'s SOF ¶ 18. While travelling east on 82nd Street, Mariano saw a person running north (towards 82nd Street) in a north-south alley between Maryland and Drexel. *Id.* ¶ 19. Mariano thought that this was the person Gonzalez had been pursuing, but he does not know how that person got from the gangway to the alley. *Id.* SOF ¶ 20. Mariano saw that this person was holding his right waistband; Mariano again assumed the person had a gun. *Id.* ¶ 21; Mariano Dep. 43:6-44:2. The person reached 82nd Street, turned right (east), and ran along 82nd toward Drexel; Mariano pursued him in his police car. Pl.'s SOF ¶¶ 23–24. The person Mariano was following crossed Drexel and turned right, doubling back south on the east side of Drexel. *Id.* ¶ 26. Mariano followed, and he saw the person turn left (east) into a gangway. *See id.* ¶ 27. This is not the gangway in which Childs was shot.

---

[6] As used here, the term "gangway" refers to a space, usually narrow, between two houses, though one can sometimes serve several houses in a dense area. *See, e.g.*, *United States v. Ingrao*, 897 F.2d 860, 864–65 & n.1 (7th Cir. 1990) (discussing police observations of activity in gangway and noting that the record did not make clear how many houses the gangway served); *Strong v. Jackson*, No. 10 C 1497, 2012 WL 3151315, at *2 (N.D. Ill. July 30, 2012) (discussing pursuit in neighborhood and finding two boys hiding in a "cut out" in a gangway that could not be seen from the street).

Mariano got out of his car to pursue the individual into the gangway. *See* Pl.'s SOF ¶¶ 28–29. As he approached the gangway entrance, Mariano used a "cut the pie" tactic; he intended to use the building's corner to shield him as a precaution. *See id.* ¶¶ 29–30.

Mariano testified that he saw the person he was chasing point a gun at him as he was performing the "cut the pie" maneuver. Pl.'s SOF ¶ 31; Mariano Dep. 46:13–19. Mariano further testified that he heard and smelled a gunshot, but he did not see the person he was chasing fire. Mariano Dep. 46:20–47:8, 51:9–12. The person Mariano was following then ran east into the gangway. *See* Pl.'s SOF ¶¶ 32, 34. Mariano returned to his car, drove south to 83rd Street, and turned left (east) on 83rd, now traveling in the same direction he had seen the person he was chasing run. *See id.* ¶¶ 34–35. He turned left at the next intersection and eventually entered the north entrance on 82nd Street of the north-south alley between Drexel and Ingleside. *See* Defs.' Resp. to Pl.'s SOF at 32 ¶ 37 (stating that the exact sequence of Mariano's turns is not clear from his testimony, but that it is clear that this is where he ultimately arrived).

Mariano got out of his car and started to walk south in the alley. Pl.'s SOF ¶ 38. He saw an individual he believed to be the person he was pursuing jump a fence into an apparently east-west gangway on the alley's west side. *Id.* ¶¶ 39–40. This person was Childs. Childs began running west in the gangway toward Drexel. *Id.* ¶ 41. Mariano began climbing a fence between the alley and the gangway to continue the pursuit. *See id.* ¶ 43. Mariano testified as follows about what happened next:

> As I'm trying to jump the fence -- I am getting to the top of the fence is [sic] when he stopped quickly, turned and looked at me shoulder to shoulder. I, um, was scared for my life that he might shoot me again. So I jumped off the fence, pulled my gun out, aimed at him and shot him.

5

Mariano Dep. 65:4–9.  Childs' post mortem examination report states that he sustained a gunshot wound to the back of his head, 3.5" left of the posterior midline.  Pl.'s SOF ¶ 50; Plaintiff's Ex. A at 2.

## B. The Revolver

A revolver was subsequently recovered in the first gangway, i.e., the one in which, according to Mariano's testimony, Childs shot at him, not in the gangway where Mariano shot Childs.  *See* Pl.'s SOF ¶ 46; Defs.' SOF ¶ 26; Mariano Dep. 69:5–11.  That is, the parties cite no summary judgment evidence suggesting that a gun or other weapon was found on or near Childs' body.  *Ibid.*

An Illinois State Police ("ISP") scientist tested Childs' hands for gunshot residue.  Pl.'s SOF ¶ 58.  They tested negative.  Pl.'s SOF ¶ 58.

On a form entitled "Preliminary Firearm Examination" regarding the revolver found in the gangway, the box next to "appears not to function properly" is checked, and someone wrote "Pin missing – unable to cock hammer."  Pl.'s SOF Ex. F. at FCRL 000824, ECF No. 80-6.  An ISP scientist "who examined the recovered revolver, live cartridges, and spent cartridge case for fingerprints, testified she found no latent impressions that were suitable for comparison to any particular person."  Defs.' SOF ¶ 38 (citing Wessel Dep. Ex. J, ECF No. 69-9).

## II. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A genuine dispute as to any material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  In resolving summary judgment motions, "facts must be viewed in the light

most favorable to, and all reasonable inferences from that evidence must be drawn in favor of, the nonmoving party–but only if there is a 'genuine' dispute as to those facts." *Scott v. Harris*, 550 U.S. 372, 380 (2007); *Blasius v. Angel Auto., Inc.*, 839 F.3d 639, 644 (7th Cir. 2016) (citing *Cairel v. Alderden*, 821 F.3d 823, 830 (7th Cir. 2016)).

The party seeking summary judgment has the burden of establishing that there is no genuine dispute as to any material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Modrowski v. Pigatto*, 712 F.3d 1166, 1168 (7th Cir. 2013) (explaining that Rule 56 "imposes an initial burden of production on the party moving for summary judgment to inform the district court why a trial is not necessary" (citation omitted)). After "a properly supported motion for summary judgment is made, the adverse party must" go beyond the pleadings and "set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 255 (quotation omitted); *see also Modrowski*, 712 F.3d at 1169 (stating party opposing summary judgment "must go beyond the pleadings (*e.g.,* produce affidavits, depositions, answers to interrogatories, or admissions on file), to demonstrate that there is evidence upon which a jury could properly proceed to find a verdict in her favor") (citations and quotations omitted). Summary judgment is warranted when the nonmoving party cannot establish an essential element of its case on which it will bear the burden of proof at trial. *Kidwell v. Eisenhauer*, 679 F.3d 957, 964 (7th Cir. 2012).

Here, the parties disagree about whether certain factual disputes are genuine and, if so, whether the disputed facts are material. "The underlying substantive law governs whether a factual dispute is material: 'irrelevant or unnecessary' factual disputes do not preclude summary judgment." *Carroll v. Lynch*, 698 F.3d 561, 564 (7th Cir. 2012) (quoting *Anderson*, 477 U.S. 242, 248 (1986)). To create a genuine dispute, the contradictory evidence of a fact must raise

7

more than "[m]ere 'metaphysical doubt as to the material facts.'" *Id.* (quoting *Matsushida Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)). The court therefore begins by outlining the underlying Fourth Amendment principles that determine the materiality of the facts.

### III. FOURTH AMENDMENT PRINCIPLES

Intentionally shooting a person constitutes a "seizure" within the meaning of the Fourth Amendment. *Muhammed v. City of Chicago*, 316 F.3d 680, 683 (7th Cir. 2002)) (citing *Tennessee v. Garner*, 471 U.S. 1, 11–12 (1985)). "[A] claim of excessive force in the course of making a seizure of the person is properly analyzed under the Fourth Amendment's objective reasonableness standard." *Scott v. Harris*, 550 U.S. 372, 381 (2007) (quoting *Graham v. Connor*, 490 U.S. 386, 388 (1989)) (internal quotation marks and alterations omitted). The defendants invoke the doctrine of qualified immunity in their motion for summary judgment. Mem. Supp. Mot. Summ. J. 11–13, ECF No. 71.

Under the heading of qualified immunity, the defendants acknowledge that "[t]here is no question that Plaintiff's constitutional right to be free from use of excessive force was clearly established at the time of the incident," but they argue that Mariano's conduct "does not set out a constitutional violation." Mem. Supp. Mot. Summ. J. 12. The Supreme Court has repeatedly cautioned that "clearly established law" should not be defined "at a high level of generality." *White v. Pauly*, 137 S. Ct. 548, 552 (2017) (per curiam) (collecting cases and quoting *Ashcroft v. al–Kidd*, 563 U.S. 731, 742 (2011)). As the parties do not attempt to define the right at issue with greater specificity than the general description of the Fourth Amendment right in *Graham*, the analysis collapses into the question of whether a reasonable jury could find that a Fourth

Amendment violation occurred.[7]

The Fourth Amendment reasonableness standard makes allowances for the realities police officers confront in their work: "[P]olice officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Graham*, 490 U.S. at 396. The objective inquiry thus requires a weighing of the "totality of the circumstances" surrounding the incident. *Id.* (citing *Garner*, 471 U.S. at 8–9); *Marion v. City of Corydon*, 559 F.3d 700, 705 (7th Cir. 2009). Nevertheless, the Supreme Court held in *Garner*, and has since reiterated, that "it is unreasonable for an officer to 'seize an unarmed, nondangerous suspect by shooting him dead.'" *Brosseau v. Haugen*, 543 U.S. 194, 197 (2004) (per curiam) (quoting *Garner*, 471 U.S. at 11); *see also Scott*, 550 U.S. at 382–83 (distinguishing *Garner* from a car chase in which an officer bumps a fleeing vehicle in an effort to stop it). "But 'where the officer has probable cause to believe that the suspect poses a threat of serious physical harm, either to the officer or to others, it is not constitutionally unreasonable to prevent escape by using deadly force.'" *Brosseau*, 543 U.S. at 197–98 (quoting *Garner*, 471 U.S. at 11) (brackets omitted); *accord Muhammed*, 316 F.3d at 683 (citing *Garner*, 471 U.S. at 11–12). Consistent with *Garner*, "[c]ourts within the Seventh Circuit have regularly granted and affirmed summary judgment on excessive force

---

[7] In the case cited by the plaintiff, for instance, an arresting officer argued that he was entitled to summary judgment on qualified immunity because he had "arguable probable cause" to arrest even if a fact issue existed on whether he actually had probable cause. The Seventh Circuit disagreed, reasoning as follows:
> When, as here, "the arrestee challenges the officer's description of the facts and presents a factual account where a reasonable officer would *not* be justified in making an arrest, then a material dispute of fact exists. Where there is a genuine issue of material fact surrounding the question of plaintiff's conduct, we cannot determine, as a matter of law, what predicate facts exist to decide whether or not the officer's conduct clearly violated established law." *Arnott v. Mataya*, 995 F.2d 121, 124 (8th Cir. 1993). Because the facts within Officer Kovats' knowledge at the time of the arrest are a matter of dispute between the parties, summary judgment on the basis of 'arguable probable cause' also is inappropriate.

*Morfin v. City of E. Chicago*, 349 F.3d 989, 1007 (7th Cir. 2003). Under a similar analysis, if a material dispute exists over what facts were within Mariano's knowledge, this court cannot grant summary judgment on qualified immunity. *See id.*

9

claims where the suspect threatened an officer with a weapon or where the officer reasonably believed that the suspect had a weapon." *Roos v. Patterson*, No. 10–4073, 2013 WL 3899966, at *8 (C.D. Ill. July 29, 2013) (collecting cases).

The Fourth Amendment reasonableness inquiry is objective in the sense that the officer's "underlying intent or motivation," good or bad, does not matter. *Graham*, 490 U.S. at 397 (citation omitted). Instead, an officer's use of force must be evaluated from the point of view of "a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Graham*, 490 U.S. at 396 (citing *Terry v. Ohio*, 392 U.S. 1, 20–22 (1968).

Establishing the facts of which the officer was subjectively aware still matters in the Fourth Amendment's reasonableness analysis. *See Muhammed*, 316 F.3d at 683 ("What is important is the amount and quality of the information known to the officer at the time he fired the weapon when determining whether the officer used an appropriate level of force." (citing *Sherrod v. Berry*, 856 F.2d 802, 804–05 (7th Cir. 1988). The proper question is whether "the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Graham*, 490 U.S. at 397 (quoting *Scott v. United States*, 436 U.S. 128, 137–139 (1978)). In this sense, the officer can turn out to be wrong about the facts that appeared to justify the use of force, but if the officer's view of the facts was objectively reasonable at the time, the Fourth Amendment deems the use of force reasonable. *See Sherrod*, 856 F.2d at 807 ("*It is not necessary that the danger which gave rise to the belief actually existed*; it is sufficient that the person resorting to self-defense at the time involved reasonably believed in the existence of such a danger . . . . *In forming such reasonable belief a person may act upon appearances*." (quoting *Davis v. Freels*, 583 F.2d 337, 341 (7th Cir. 1978) (emphasis in *Sherrod*)). Therefore, evidence tending to show whether the things

10

Mariano claims to have observed, in fact, happened is material because applying the objective test requires a fit between the knowledge of the hypothesized objectively reasonable officer and the knowledge of the real-world officer who used force. *See Graham*, 490 U.S. at 396–97.

## IV. FACT DISPUTES EXIST ON FOURTH AMENDMENT CLAIM

"The award of summary judgment to the defense in deadly force cases may be made only with particular care where the officer defendant is the only witness left alive to testify." *Plakas v. Drinski*, 19 F.3d 1143, 1147 (7th Cir. 1994). The Seventh Circuit has repeatedly cautioned district courts to grant summary judgment sparingly and look at the evidence with a critical eye in deadly force cases in which, as in this case, the witness most likely to tell a different story cannot speak from the grave. *See Cyrus v. Town of Mukwonago*, 624 F.3d 856, 862 ("we have recognized that summary judgment is often inappropriate in excessive-force cases because the evidence surrounding the officer's use of force is often susceptible of different interpretations" (citing *Gregory v. Cnty. of Maui*, 523 F.3d 1103, 1107 (9th Cir. 2008)) (other internal citation omitted)); *Abdullahi v. City of Madison*, 423 F.3d 763, 773 (7th Cir. 2005) ("we have held on many occasions that summary judgment or judgment as a matter of law in excessive force cases should be granted sparingly"); *Plakas*, 19 F.3d at 1147. Mindful of the caution with which summary judgment should be approached in deadly force cases, the court determines that genuine disputes over facts material to whether Mariano's use of deadly force was objectively reasonable preclude summary judgment on the plaintiff's Fourth Amendment claim.

The plaintiff argues that Mariano undisputedly lost sight of the person he was chasing several times and so could not be sure that Childs was the person he and Gonzalez initially pursued. The court need not determine whether the plaintiff is correct because even if Mariano was objectively reasonable in his identification, a jury could find that he lacked an objectively

reasonable basis to believe that Childs had a gun or otherwise posed a physical threat to Mariano or others. The defendants rely on four sources of evidence to show the reasonableness of Mariano's stated belief that Childs was armed and posed a threat.

First, Mariano testified that C.M. told him that Childs had a gun when he tried to rob him, but C.M. omitted that fact from his version of his encounter with Mariano and Gonzalez. A dispute about what an officer was told can be material when it affects the officer's objective knowledge of facts justifying the use of force. *Cf. Holmes v. Vill. of Hoffman Estates*, 511 F.3d 673, 680–81 (7th Cir. 2007) (recognizing that a genuine dispute about what one officer told another when the second officer arrived on the scene could defeat summary judgment but concluding that the particular dispute was not genuine). As already explained, C.M. did not mention telling Mariano and Gonzalez that the men in ski masks who tried to rob him were armed. *See* C.M. Statement 6. According to C.M.'s statement, one of the officers "had seen one of the guys trying to rob [him] running and [the officer] started chasing him." C.M. Statement 6-7. Viewed in a light favorable to the plaintiff, C.M. did not testify that he communicated to Mariano or Gonzalez that the person who ran was the person who attempted to rob C.M.; a reasonable jury could find that that both assumed as much from the fact that the person in the black hoodie ran. *See id.* As the defendants acknowledge, whether C.M. did more than say he was robbed and "pointed in a particular direction" is disputed on this record. *See* Defs.' Reply to Pl.'s Resp. to Defs.' SOF 4 ¶ 9, ECF No. 83 (stating that it is undisputed that "C.M. told the officers he had been robbed and pointed them in a particular direction"); *see also* C.M. Statement at 6; Mariano Dep. Mariano Dep. 34:10–19.

It is not the Court's role to determine which version of what C.M. told Mariano and Gonzalez is more credible at summary judgment. Rather, C.M.'s version must prevail when

12

deciding the instant motion. *See Weinmann v. McClone*, 787 F.3d 444, 446 (7th Cir. 2015) (stating that a defendant's motion for summary judgment on qualified immunity "is not the time for resolution of disputed facts;" rather the court must "accept the plaintiff's version of the facts, without vouching for their ultimate accuracy" (citing *Jewett v. Anders*, 521 F.3d 818, 819 (7th Cir. 2008); *Miller v. Gonzalez*, 761 F.3d 822, 824–25 (7th Cir. 2014) (describing competing versions of what happened during arrest in officer and plaintiff's depositions and stating that "because this case comes before us from a motion for summary judgment, we take all of the facts, including this one, in the light most favorable to [the plaintiff], and construe all reasonable inferences from the evidence in his favor" (citation omitted)). Hence, for summary judgment purposes, C.M. did not tell Mariano that the person who robbed him had a gun.

In *Garner*, the Supreme Court held that the fact that the person the officer shot "was a suspected burglar could not, without regard to the other circumstances, automatically justify the use of deadly force. [The officer] did not have probable cause to believe that Garner, whom he correctly believed to be unarmed, posed any physical danger to himself or others." 471 U.S. at 21 (noting that an armed burglar would present a different case). As it is possible that C.M. was robbed by an unarmed man, Mariano's use of force must be justified with other objective evidence of Childs' dangerousness. *See id.*

Second, Mariano testified that he assumed Childs had a gun because Mariano twice saw Childs holding or "clinching" the right side of his waistband. As that conduct can be consistent with the conduct of an unarmed person, a reasonable fact finder could view Mariano's assumption in the light most favorable to the plaintiff as objectively unreasonable and find that he did not have probable cause to believe that Childs had a gun, however. *See Al-Mujaahid v. Bandt*, No 12-CV-00484, 2013 WL 6451182, at *5–6 (E.D. Wis. Dec. 10, 2013) (denying

summary judgment on excessive force claims because fact dispute existed over whether motorist's movements towards console objectively justified officers' belief that motorist was armed); *Strong v. Jackson*, No. 10 C 1497, 2012 WL 3151315, at *1 (N.D. Ill. July 30, 2012) (denying summary judgment where officer testified that he was told that suspect was "running holding his side" because jury should decide whether officer's belief that suspect was armed was objectively reasonable).

Third, a genuine factual dispute exists over whether Childs, in fact, fired at Mariano as Mariano testified. The summary judgment record contains evidence that Childs' hands tested negative for gunshot residue and that no fingerprints suitable for testing, including Childs', were found on the gun, Pl.'s SOF ¶¶ 58–59. The defendants point to expert testimony to offer other possible interpretations of the forensic evidence. An ISP scientist could not opine on whether Childs had fired a weapon because gunshot residue might have been removed, not deposited, or not detected. *See* Chapman Dep. 26:17–22, ECF No. 80-3; 51:20–52:12, ECF No. 69-7. An ISP fingerprint examiner testified that the absence of latent fingerprint impressions on the revolver does not negate the possibility that Childs, or anyone else, held it. *See* Defs.' Reply to Pl.'s Resp. to Defs.' SOF at 40 ¶ 59, ECF No. 83. And a third ISP scientist testified that the revolver was missing an ejector pin when she received it. Pratt Dep. at 29:11–13, ECF No. 80-4. She further testified that she did not believe that it was safe to test fire without the ejector pin, but she did not know "with any certainty" whether it could have fired without that pin.[8] *Id.* at 56:18–57:1.

The foregoing evidence submitted by the defendants raises questions about how much weight should be given to the plaintiff's forensic evidence and what inferences should be drawn

---

[8] Diana Pratt, the ISP scientist on whose testimony the defendants rely, does not appear to be the person who filled out the preliminary examination form for the revolver. The preliminary firearm examination form in the record lists "Dena Inempolidis" in the blank for "Examined by" and states that the preliminary examination occurred "before the firearm was submitted to another section for processing." ECF No. 80-6 at FCRL000824. Pratt testified that when she test fired the revolver, she used "a pin that was in the lab." Pratt Dep. 35:20–23.

from it, but that alone does not entitle them to summary judgment. The jury, not the court, determines how much weight admissible[9] expert testimony should be accorded and what inferences should be drawn from it. *See Terry v. Woller*, No. 08-4063, 2010 WL 5069699, at *10–11 (C.D. Ill. Dec. 7, 2010) (denying summary judgment and explaining that "[d]etermining the weight to accord the expert's testimony is not something that can be accomplished on summary judgment" because "our legal system is built on the premise that it is the province of the jury to weigh the credibility of competing witnesses" (quoting *Kansas v. Ventris*, 556 U.S. 586, 594 n.* (2009)) (alterations omitted)). Because a reasonable jury viewing the competing summary judgment evidence in a light favorable to the plaintiff could find that Childs never held the revolver that was recovered and so did not shoot at Mariano, a genuine fact dispute suitable for jury resolution exists. *See Azania v. Superintendent, Ind. State Prison*, No. 3:09 CV 499, 2015 WL 685896, at *16 (N.D. Ind. Feb. 18, 2015) (discussing finding of Indiana Supreme Court that withholding a laboratory report showing that defendant's hands tested negative for gunshot residue "undermined the finding that [the defendant] was the trigger man"); *cf. Jones v. Butler*, 778 F.3d 575, 583 (7th Cir. 2015) (holding on habeas petition that counsel employed reasonable trial strategy by arguing that government failed to show a forensic link between defendant and shooting in murder case because tests of defendant's hands for gunshot residue were inconclusive); *United States v. Allen*, 358 F. App'x 697, 698, 700 (7th Cir. 2009) (unpublished) (recognizing that negative gunshot residue test and absence of fingerprints on weapon were probative of whether defendant possessed gun but holding that reasonable jury could have found possession by crediting eyewitnesses' testimony).

---

[9] The court implies nothing about the admissibility of the testimony of any expert witness. No party has argued that the testimony of any of the defendants' experts is inadmissible, and the court declines to consider the matter on its own initiative. *See Lewis v. CITGO Petroleum Corp.*, 561 F.3d 698, 704–06 (7th Cir. 2009) (holding that district court had discretion to consider challenge to admissibility of expert testimony at summary judgment where movant raised challenge in motion and nonmovant did not respond).

Finally, Mariano testified that Childs initially fled west down a gangway and then turned to face Mariano "shoulder to shoulder." Mariano Dep. at 65:6–7. Mariano believed that Childs was going to shoot at him "again." *Id.* at 65:8. Because the fact Childs fired at Mariano the first time is genuinely disputed, this testimony, seen in the light most favorable to Childs, adds at most that Childs changed direction as Mariano climbed a fence behind him; Mariano describes no specifically threatening physical acts on Childs' part beyond turning and looking at him. *See id.* at 65:4–9. Mariano did order Childs to "get down" several times, and he did not comply. *Id.* at 62:5–6. Mariano also testified that he feared for his safety, *id.* at 65:7, but his subjective belief, no matter how sincerely held, that his life was in danger does not by itself make his use of deadly force objectively reasonable, *see Weinmann*, 787 F.3d at 449 (holding summary judgment should have been denied and stating that "[i]t does not matter for purposes of the Fourth Amendment that [the officer] subjectively believed that his life was in danger. The test is an objective one . . . .").

Furthermore, the record includes evidence from which a reasonable jury could find that Childs had turned away from Mariano by the time he fired, lessening the threat he apparently posed. *See Estate of Heenan ex rel. Heenan v. City of Madison*, 111 F. Supp. 3d 929, 944 (W.D. Wis. 2015) (denying summary judgment in excessive force case in part based on actual dispute over whether person whom officer shot "was retreating or advancing" when shots were fired). The medical examiner's report in the record states that the bullet Mariano fired entered the back of Childs' head. Defs.' SOF Ex. A at 2, ECF No. 80-1. The defendants suggest possible explanations for that fact besides Mariano's shooting at the head of an apparently retreating person, but at summary judgment, reasonable inferences must be drawn in Childs' favor. The jury should decide which version of the facts to believe. *See Scott v. Edinburg*, 346 F.3d 752,

757–58 (7th Cir. 2003) (holding fact issue precluded summary judgment on excessive force claim because portions of officer's deposition differed as to whether suspect was driving toward or away from officer); *Estate of Starks v. Enyart*, 5 F.3d 230, 233–34 (7th Cir. 1993) (holding factual dispute over whether man driving a taxi was fleeing or driving toward a police officer precluded summary judgment on excessive force claims against officers who fatally shot driver); *Heenan,* 111 F. Supp. 3d at 944–45 (denying summary judgment where record allowed jury to conclude, among other things, that burglary suspect appeared to be unarmed); *see also Reed v. Town of N. Judson*, 996 F.2d 1219, 1993 WL 171362, at *4 (7th Cir. 1993) (unpublished table decision) (affirming entry of summary judgment for officer but distinguishing cases in which the record "include[d] sufficient contradictory evidence to submit the case to a jury" because in those cases, "there were other witnesses, expert affidavits, or significant physical evidence (such as the deceased person having been shot in the back)").

"[A] person has a constitutional right not to be shot unless an officer reasonably believes that he poses a threat to the officer or someone else." *Weinmann*, 787 F.3d at 450 (distilling this rule from *Graham* and *Garner*). On the other hand, police officers have a right to protect themselves, even when they do something risky like "pursu[ing] a fleeing felon into a dark alley." *Starks*, 5 F.3d at 233 (citing this as an example). Viewing this record in the light most favorable to the plaintiff, Mariano had not been told that Childs had a gun. Nor had Childs shot at him. Childs, who did not comply with Mariano's orders to stop, turned toward Mariano then turned away and fled. Mariano fired at the head of the retreating Childs. Much of the forensic evidence can be reasonably viewed as contradicting Mariano's testimony on key aspects of the chase, though the defendants dispute that account. Because a reasonable jury considering the circumstances in their totality could credit the plaintiff's version of the facts and find that

Mariano's use of deadly force was objectively unreasonable, summary judgment is inappropriate on the plaintiff's Fourth Amendment claim. *See Garner*, 471 U.S. at 11 ("It is not better that all felony suspects die than that they escape.").

### V. NO EVIDENCE OF AN AGREEMENT; CONSPIRACY CLAIMS DISMISSED

Defendants also seek summary judgment on the plaintiff's wrongful death, survival, and state law conspiracy claims. The defendants premise their request for summary judgment on the first two claims solely on the plaintiff's inability to succeed on his Fourth Amendment claim brought under § 1983. *See* Mem. Supp. Mot. Summ. J. 9–11, ECF No. 71; Pl.'s Resp. to Mem. Supp. Mot. Summ J. 11–12, ECF No. 79.

Childs, Sr.'s, wrongful death claim is derivative of Childs' rights:

> An action under the Wrongful Death Act may be said to be derivative of the decedent's rights, for the ability to bring the wrongful death action "depends upon the condition that the deceased, at the time of his death, had he continued to live, would have had a right of action against the same person or persons for the injuries sustained."

*Williams v. Manchester*, 888 N.E.2d 1, 11 (Ill. 2008) (quoting *Biddy v. Blue Bird Air Serv.*, 30 N.E.2d 14, 18 (Ill. 1940)); *see also Varelis v. Nw. Mem'l Hosp.*, 657 N.E.2d 997, 1000 (Ill. 1995).

As summary judgment has been denied on the plaintiff's Fourth Amendment claim, the derivative wrongful death and survival claims likewise survive. The Illinois Survival Act "does not create a statutory cause of action. It merely permits a representative of the decedent to maintain those statutory or common law actions which have already accrued to the decedent before he or she died," here Childs, Sr. *Bryant v. Kroger Co.*, 570 N.E.2d 1209, 1210 (Ill. App. Ct. 1991). Consequently, the plaintiff's survival and wrongful death claims depend on Childs' ability to recover under the Fourth Amendment through § 1983, *see Taylor v. City of Chicago*, No. 01 C 2057, 2003 WL 22282386, at *6 (N.D. Ill. Sept. 30, 2003) (holding at summary

judgment that survival and wrongful death claims depended on success of excessive force claim under § 1983), and so they withstand summary judgment because the Fourth Amendment claim does.

The defendants' request for summary judgment on the plaintiff's § 1983 conspiracy theory and his state law conspiracy claim is a different story, however. "To establish § 1983 liability through a conspiracy, a plaintiff must establish that (1) a state official and private individual(s) reached an understanding to deprive plaintiff of his constitutional rights; and (2) those individual(s) were willful participants in joint activity with the State or its agents." *Logan v. Wilkins*, 644 F.3d 577, 583 (7th Cir. 2011) (quoting *Williams v. Seniff*, 342 F.3d 774, 785 (7th Cir. 2003) (alteration omitted)); *see also* 42 U.S.C. § 1985(3). To succeed on a conspiracy claim under Illinois law, the plaintiff must prove "a combination of two or more persons for the purpose of accomplishing by concerted action either a lawful purpose by unlawful means or an unlawful purpose by lawful means." *Buckner v. Atl. Plant Maint., Inc.*, 694 N.E.2d 565, 571 (Ill. 1998) (citing *Adcock v. Brakegate, Ltd.*, 645 N.E.2d 888, 894 (Ill. 1994)).

The defendants argue that the plaintiff has produced no evidence of an agreement between two people, much less a state actor and a private individual, to violate Childs' constitutional rights. Mem. Supp. Mot. Summ. J. 8. The plaintiff does not address this issue in his response.

The plaintiff has not carried his summary judgment burden. The only actors involved in the shooting on the summary judgment record worked for the Chicago Police Department at the time, i.e., they were state actors. *See* Defs.' SOF ¶¶ 4–5 ("Mariano at all relevant times was a police officer with the Chicago Police Department"). Because the plaintiff identifies no evidence of an agreement between state and private actors, his § 1983 claims must be dismissed to the

19

extent they attempt to impose liability under a conspiracy theory. *See, e.g.*, *Williams*, 342 F.3d at 785–86 (holding evidence that sheriff's statements that members of the public complained did not create fact issue on whether agreement existed between state actors and complainers). Also, Mariano cannot have conspired with the City under Illinois law "because the acts of an agent are considered in law to be the acts of the principal." *Bookner*, 694 N.E.2d at 571 (holding that complaint failed to state a claim of conspiracy between principal and agent to deprive the plaintiff of workers' compensation benefits for this reason).

## VI. CONCLUSION

For the reasons discussed above, the defendants' motion for summary judgment (ECF No. 68) is granted in part and denied in part. The plaintiff's conspiracy claims under 42 U.S.C. § 1983 and state law are dismissed. A genuine dispute over material facts precludes summary judgment on the plaintiff's Fourth Amendment claim of excessive force. Consequently, the motion for summary judgment on the balance of the plaintiff's claims is denied. A status conference is set for April 7, 2017, at 9:30 am.


Date: March 28, 2017                                   /s/
                                                Joan B. Gottschall
                                                United States District Judge